■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEAN MARC DESMARAT, Appellant. [833 NYS2d 559]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Chambers, J.), rendered November 6, 2003, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

On June 27, 2002 police officers responded to a radio call and discovered a body lying near the rear fire exit door of a motel, covered in plastic bags. The victim's hands and feet were bound together with a sheet, and ripped paper currency was attached to his body. Nearby, underneath the window of room 210 of the motel, the police discovered ripped clothing and more ripped paper currency. Inside the motel, they observed bloody drag marks leading to the area near room 210. When a detective approached room 210, he heard a television with the volume turned up loud, and after knocking on the door and not receiving a response, the detective had a motel employee open the door. Once inside the room, the detective saw ripped bed sheets, ripped currency, blood, and newspapers. After the room was secured, the crime scene unit seized these items within several hours of the detective's initial entry. At the suppression hearing, the Supreme Court ruled that the entry and seizure was proper under the emergency exception to the warrant requirement.

From the time the Court of Appeals decided *People v Mitchell* (39 NY2d 173 [1976], *cert denied* 426 US 953 [1976]), our analysis of whether the police were presented with an emergency that permitted their warrantless entry and search of a protected area consistent with the Fourth Amendment to the United States Constitution has been governed by a three-prong test: whether (1) the police had reasonable grounds to believe that there was an emergency at hand and an immediate need for

their assistance for the protection of life or property, (2) the search was not primarily motivated by an intent to arrest and seize evidence, and (3) there was some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. However, in light of the United States Supreme Court's holding in *Brigham City v Stuart* (547 US —, —, 126 S Ct 1943, 1948 [2006]), an inquiry into the subjective motivations of the police is no longer necessary in determining whether the Fourth Amendment to the United States Constitution has been violated. Instead, the only questions for our consideration under the Fourth Amendment are whether the police had reasonable grounds to believe that there was an emergency at hand and whether there was some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. Regardless of whether the New York State Constitution requires retention of the *Mitchell* standard (*see* NY Const, art I, § 12; *cf. People v Torres*, 74 NY2d 224, 226 [1989]), an issue we need not reach here, we find that, under the circumstances, the police were presented with an emergency situation under both the *Mitchell* rule and the *Brigham City* rule (*see People v Dallas*, 8 NY3d 890 [2007]). In totality, the objective facts observed by the police provided them with a reasonable basis to believe that an emergency was at hand, that other persons may have been at risk of injury, and that the emergency was associated with room 210 (*see People v Hodge*, 44 NY2d 553, 557-558 [1978]; *People v Vaccaro*, 39 NY2d 468 [1976]; *People v Mateos*, 255 AD2d 401 [1998]; *People v Taper*, 105 AD2d 813, 814 [1984]; *People v Devine*, 66 AD2d 244, 246 [1979], *cert denied* 449 US 1085 [1981]).

Moreover, the crime scene unit's subsequent recovery of evidence from the motel room did not exceed the scope and duration of the emergency (*see People v George*, 7 AD3d 810, 811 [2004]; *cf. People v Cohen*, 87 AD2d 77, 82-83 [1982], *affd* 58 NY2d 844 [1983], *cert denied* 461 US 930 [1983]), inasmuch as room 210 was secured while officers waited for the crime scene unit, which arrived within several hours and then seized the ripped currency, ripped sheet, and blood evidence that was in plain view (*see People v George, supra; see also People v Brown*, 96 NY2d 80, 89 [2001]). While the newspapers from which the police later obtained the defendant's fingerprints may not have been lawfully seized under the plain-view doctrine because their incriminating nature was not immediately apparent, the information derived from them—that the defendant was the occupant of room 210—was, in fact, subsequently obtained by the police from a variety of independent sources (*see People v Good-*

*win,* 286 AD2d 935 [2001]; *see generally People v Arnau,* 58 NY2d 27, 32-33 [1982], *cert denied* 468 US 1217 [1984]). Accordingly, suppression of the physical evidence was properly denied. Mastro, J.P., Florio, Carni and McCarthy, JJ., concur.