■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARC RINGEL, Appellant. [44 NYS3d 152]—

Appeal by the defendant from a judgment of the Supreme

Court, Nassau County (Carter, J.), rendered March 27, 2014, convicting him of criminal possession of a weapon in the first degree (seven counts), criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the second degree, criminal possession of a forged instrument in the first degree, criminal possession of marihuana in the first degree, criminal possession of a weapon in the third degree (27 counts), criminal possession of a forged instrument in the second degree (two counts), reckless endangerment in the first degree, unlawful storage of explosives in violation of Labor Law § 453, and unlicensed possession of explosives in violation of Labor Law § 458 (1), upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and the statements he made to law enforcement officials after law enforcement officials entered his parents' home.

Ordered that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and the statements he made to law enforcement officials after law enforcement officials entered his parents' home are granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Nassau County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

Early in the afternoon of March 6, 2012, the police received a notification regarding a silent alarm at a specified address in Woodmere. One of the two police officers who initially responded to the notification had responded to "[a]t least hundreds" of such alarms during his career, and the other officer had responded to "more than fifty, . . . [m]aybe up to one hundred." Usually, they were false alarms. Moreover, although many people would allow the police to search their homes when the police arrived in response to such notifications, a search was not a "requirement" of the Nassau County Police Department.

When the two officers arrived at the address specified in the notification, they saw the defendant working underneath a van, one of two vehicles parked in the driveway. The police approached the defendant, and he stood up. There was no evidence that the defendant, a middle-aged man, had been involved in any criminal wrongdoing, and the officers detected no sign of a break-in at the residence. When the officers told the defendant that an alarm had been activated, the defendant said that it must have been his car alarm. When one of the of-

ficers responded that the alarm was a house alarm, the defendant replied that he must have triggered it accidentally. He told the officers that the house belonged to his parents. When the officers asked the defendant for identification, he was able to produce from his pocket a credit card bearing the name of the homeowner, the defendant's father. The officers said that they needed photographic identification, but the defendant could not produce any. He told them that he had keys to the house and showed them his keys. One of the officers said, "no, sir, we have to make sure everybody is okay in the house." The defendant became agitated and evasive, and he offered various excuses, including that he had to go to the airport to pick up his parents who, he said, were en route from Florida.

The police radioed for additional officers because the defendant was unable to produce photographic identification and was "acting shifty, very jittery." When the defendant said that his sister was going to pick him up to take him to the airport, the police accused him of lying. The defendant took out his cell phone and called his sister. One of the officers told the defendant that he wanted to talk to the defendant's sister, and the defendant handed him the phone. The other officer again told the defendant that they needed to open the door "and make sure everybody is okay." The defendant walked to the front door and demonstrated, by unlocking and relocking the door, that his key operated the lock. When the officer again told the defendant that they wanted to go into the house "to make sure everybody is okay," the defendant opened the door, "wrapped his hand around the door and tried to jump in, attempting to close the door behind him." The officer pushed the defendant forward and entered the house himself. Once inside, the officer saw two hand grenades and a handgun. After the defendant was handcuffed and put into a police car, the police went through the house. No one was there.

The police obtained a search warrant. During the ensuing search, they recovered, among other things, guns, forged gun permits, explosives, 10 pounds of marihuana, and forged currency. The defendant was indicted and he moved, inter alia, to suppress the results of the search, as well as statements he had made to law enforcement officials after their entry into the house. Following a suppression hearing, the Supreme Court denied suppression. The court held that the police had acted properly under the "emergency doctrine," and thus, were lawfully present in the home when they observed the hand grenades and a gun. The court accordingly denied those branches of the defendant's omnibus motion which were to

suppress physical evidence and the statements he made to law enforcement officials after they entered his parents' home. The defendant eventually pleaded guilty, and the court imposed the promised sentence. The defendant appeals, contending that the court erred in denying his suppression motion. He also asks that, in the event his convictions are sustained, we reduce his sentence in the interest of justice.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" (US Const Amend IV; *see* NY Const, art I, § 12). "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion' " (*Florida v Jardines*, 569 US —, —, 133 S Ct 1409, 1414 [2013], quoting *Silverman v United States*, 365 US 505, 511 [1961]; *see United States v Allen*, 813 F3d 76, 77 [2d Cir 2016]). " '[S]ubject only to carefully drawn and narrow exceptions, a warrantless search of an individual's home is per se unreasonable and hence unconstitutional' " (*People v Jenkins*, 24 NY3d 62, 64 [2014], quoting *People v Knapp*, 52 NY2d 689, 694 [1981]). One of those exceptions is the "emergency doctrine" (*People v Dallas*, 8 NY3d 890, 891 [2007]). Under that doctrine, police officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury" (*Brigham City v Stuart*, 547 US 398, 403 [2006]; *see Michigan v Fisher*, 558 US 45, 48 [2009]; *People v Mitchell*, 39 NY2d 173, 177 [1976]).

In the evaluation of whether a warrantless entry was justified under the "emergency doctrine," the evidence must establish as a threshold matter that the police had "an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid" (*Michigan v Fisher*, 558 US at 47 [internal quotation marks omitted]; *see Brigham City v Stuart*, 547 US at 403; *People v Rodriguez*, 77 AD3d 280, 287 [2010]). Under the Fourth Amendment, the officers' subjective belief is irrelevant: "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action' " (*Brigham City v Stuart*, 547 US at 404, quoting *Scott v United States*, 436 US 128, 138 [1978]; *see People v Scott*, 133 AD3d 794, 797 [2015]; *People v Desmarat*, 38 AD3d 913, 915 [2007]).

Here, the evidence at the suppression hearing fell short of the required threshold showing because it did not establish

that the circumstances known to the police when they entered the house supported an objectively reasonable belief that entry was needed to render emergency assistance to an injured occupant or to protect an occupant from imminent injury (*see Brigham City v Stuart*, 547 US at 403). The police were responding, in the early afternoon, to the type of notification that, in their experience, was usually a false alarm, not an emergency. Indeed, the People agree that the triggering of the alarm did not in itself permit the police to enter the house under the emergency doctrine. When the police arrived, they found the defendant, a middle-aged man, openly working on a van in the driveway. He had a key to the house. He explained his connection to the house, and he gave the police his phone so his sister could corroborate what he said. Moreover, there was no sign of a break-in. Neither of the police officers testified that he had any inkling that there were guns and other weaponry in the house. Their testimony was about their concern for the possible safety of anyone who might be in the house. Nothing, however, supported an objectively reasonable belief that "there was an emergency at hand requiring the immediate assistance of the police in order to protect life or property" (*People v Hammett*, 126 AD3d 999, 1001 [2015]; *see People v Mormon*, 100 AD3d 782, 782-783 [2012]; *People v Garrett*, 256 AD2d 588, 588-589 [1998]). Indeed, the facts known to the officers fell far short of the circumstances under which the emergency doctrine has been held applicable (*see e.g. Michigan v Fisher*, 558 US at 48; *People v Mitchell*, 39 NY2d at 178; *People v Timmons*, 54 AD3d 883, 884-885 [2008]; *People v Desmarat*, 38 AD3d at 914; *People v Manning*, 301 AD2d 661, 662 [2003]; *People v Dixon*, 281 AD2d 430, 430 [2001]). Simply put, this warrantless entry under the emergency doctrine was "unreasonable" (US Const Amend IV), because no facts then known supported a reasonable belief of an emergency.

That the police did not have the right to enter the house did not mean that they were required to simply walk away. We are not suggesting that the police were required to disregard any concerns they had about the safety of any occupants of the house brought about by the defendant's nervousness. Investigation was appropriate, and the record shows that additional information was close at hand. One of the officers testified that there was a car running in the driveway of the house next door. Thus, the officer could have sought information from the neighbor regarding the defendant's parents. Also, one of the officers was seeking information by speaking with the defendant's sister on the defendant's cell phone. At the suppression hearing, the defendant's sister testified that she had told the

officer, " 'I'm coming right over. I'm in the next town, I'll be over in two or three minutes.' " The officer had responded, "okay." The defendant's sister also testified that after she spoke to the officer she went to her parents' house and that it had taken her "[f]our minutes, the most."

When the police have an objectively reasonable ground for believing that there is an emergency, a warrantless entry permitted under the emergency doctrine is not retroactively rendered impermissible because there was, in fact, no emergency (*see Michigan v Fisher*, 558 US at 49). So, too, an impermissible entry is not rendered retroactively permissible when the police find evidence of criminality inside (*see e.g. People v Mormon*, 100 AD3d at 782-783). Were the law otherwise, seizures themselves, regardless of the circumstances leading up to them, would be all that mattered. In that event, the Fourth Amendment would no longer protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" (US Const Amend IV).

In sum, the police officer's entry into the house was not supported by objective facts giving rise to a reasonable belief that someone in the house required emergency assistance. Accordingly, the physical evidence recovered inside the house, as well as the statements that the defendant made to police officers after the unlawful entry, must be suppressed (*see Wong Sun v United States*, 371 US 471, 485 [1963]; *People v Hammett*, 126 AD3d at 1000). Without that evidence, there could not be sufficient evidence to prove the defendant's guilt and, therefore, the indictment must be dismissed (*see People v Graham*, 134 AD3d 1047, 1048 [2015]).

The defendant's contention regarding his sentence is academic in light of our determination. Balkin, J.P., Hall, Barros and Connolly, JJ., concur.