=================================================================
This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 3
The People &c.,
          Respondent,
        v.
Shawn J. Sivertson,
          Appellant.


          Timothy P. Murphy, for appellant.
          Ashley R. Lowry, for respondent.


MEMORANDUM:

          The order of the Appellate Division should be affirmed.

The conclusion that the warrantless entry by police into

defendant's home was justified by exigent circumstances is a

mixed question of law and fact.  Where, as here, there is support

in the record for the Appellate Division's conclusion, the issue

- 1 -

is beyond our further review (see People v Gibson, 24 NY3d 1125, 1126 [2015]; People v Brown, 95 NY2d 942, 943 [2000]; People v Hallman, 92 NY2d 840, 842 [1998]).  "The rule applies 'where the facts are disputed . . . or where reasonable minds may differ as to the inference to be drawn [from the established facts]'" (People v Harrison, 57 NY2d 470, 477 [1982], quoting People v McRay, 51 NY2d 594, 601 [1980]).  The dissent's conclusion to the contrary is based on a narrative derived from the suppression hearing record that unduly emphasizes the testimony and resulting inferences that are favorable to defendant.

Defendant's remaining contention is without merit.

People v Shawn J. Sivertson

No. 3

RIVERA, J. (dissenting):

As a matter of law, there is no record evidence to support the trial court's ruling that exigent circumstances justified the warrantless entry into defendant's home.[1] Therefore, the Appellate Division should be reversed and a new trial ordered. I dissent.

_____

[1] Despite the majority's exhortation to the contrary, I have not misinterpreted the record below (majority op at 2). I have based my analysis on the responding officers' express testimony as to what they saw and did when they arrived at defendant's home. The People carry a heavy burden to justify a warrantless entry into a suspect's home (Welsh v Wisconsin, 466 US 740, 749-750 [1984]), and the officers' description of the unfolding events, read plainly, falls short of the constitutional benchmark to support a finding of exigent circumstances.

- 1 -

I.

Defendant was charged with one count of robbery in the first degree for stealing a few dollars from a donation jar inside a convenience store located near the University of Buffalo campus.  According to the testimony at the hearing on defendant's suppression motion, 15 to 20 officers from the Buffalo Police Department, Niagara Frontier Transit Authority, and the University of Buffalo security force responded after a store employee made a 911 call to report that a robbery had just occurred.  Based on images from the in-store surveillance video and statements from two employees who interacted with the robber, the officers developed a description of a white male in his 50s, who was armed with a small knife and was wearing a coat, gloves, and a scarf.

The store manager also told the officers that she had chased the robber across the street and through an alleyway before she lost track of him.  Several officers fanned out and conducted a search of the area, but did not locate the robber.

Meanwhile, back at the store, two people told one of the officers that earlier in the day they had seen someone who fit the description of the robber sitting on the stoop of a building across the street from the store.  Buffalo Police Officer Mayhook then went to that building and spoke with a man, who told him that the person sitting on the stoop had recently moved into a rear apartment in the building.

Based on this information, several officers surrounded the building.  As they approached, they noticed a door on one side of the rear apartment and two closed windows on the other. The lights were on inside, and they could look directly through the windows at defendant, who they observed alone and lying in bed watching television.  They described the apartment as very small, approximately 500 square feet in size, and so compact that one officer could see a pair of gloves on the kitchen table that looked like the gloves worn by the robber.

The officers knocked on the door and window for approximately ten minutes, yelling for defendant to "show your hands and come out."  Defendant made eye contact with the officers peering in his window, then rolled over and closed his eyes. One officer said that from his view it appeared defendant was in a "stupor."  Upon authorization from Officer Mayhook, several officers forced open the door, pulled defendant out of bed, and handcuffed him.  Once inside, the officers seized a black knit hat, gloves, three small knives from the kitchen counter, and a scarf and jacket.

Officer Mayhook testified that he was at the door, but did not personally witness the defendant's actions or look inside the apartment prior to giving the order to enter.  He based his decision to enter without a warrant on the other officers' observations of defendant as relayed to him, which he testified consisted of defendant matching the robber's description, as well

as the fact that the officers were unaware if defendant was alone, if defendant could access other parts of the building, or if there were other weapons in the apartment.  Officer Mayhook further testified that when he gave the order he knew the officers were armed and had surrounded the building, and that defendant was not threatening anyone.

The court partially denied defendant's suppression motion, concluding that exigent circumstances justified the warrantless entry and that items in plain view were properly seized.  However, the court granted the motion as to the jacket and scarf, finding that the police unlawfully obtained these items by opening a closed container.

The jury convicted defendant on the sole count of first-degree robbery (Penal Law § 160.15).  Thereafter, the court sentenced defendant to an indeterminate incarceratory period of 20 years to life.

The Appellate Division affirmed the conviction, concluding, as did Supreme Court, that the forced entry was justified by probable cause and exigent circumstances (People v Sivertson, 129 AD3d 1467, 1468 [4th Dept 2015]). As a matter of law, the facts do not support this conclusion.

II.

A person's home is a place of safety, security, and uninterrupted respite from the demands of the external world (see

Florida v Jardines, 133 S Ct 1409, 1414 [2013]; see also Matalon v Hynnes, 806 F3d 627, 633 [1st Cir 2015] ["It is common ground that a [person]'s home is [a] castle and, as such, the home is shielded by the highest level of Fourth Amendment protection."]) Society's interest in preserving the sanctity of the home is reflected in the federal and state constitutional guarantee that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" (see US Const, 4th amend; NY Const, art 1, § 12).  History teaches that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" (United States v District Ct. for E.D. Mich., 407 US 297, 313 [1972]).  Indeed, "[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment" (Payton v New York, 445 US 573, 587 [1980] [internal citations omitted]; see also People v Mothersell, 14 NY3d 358, 363-364 ["(I)nnocent persons are commonly encountered in private spaces, such as homes, and, in fact, possess in those spaces the most constitutionally compelling expectations of privacy."]).

To maintain a person's security in the home, it is a "basic principle" that "warrantless entries into a home to make an arrest are presumptively unreasonable" (People v McBride, 14 NY3d 440, 445 [2010]; see also Payton, 445 US at 586; People v Jenkins, 24 NY3d 62, 64 [2014]).  "Over and again [the United

States Supreme Court] has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions" (Katz v United States, 389 US 347, 357 [1967] [internal alterations, citations, and quotation marks omitted]).

One such exception, relied upon by the People here, holds that so long as "there is probable cause, the police may proceed without a warrant to effectuate an arrest within a home if exigent circumstances exist to justify a warrantless entry" (McBride, 14 NY3d at 445 [internal citations omitted]).  This exception to the warrant requirement is narrowly construed, such that "'the scope of the conduct thus sanctioned is strictly limited by the necessities of the circumstances in which it arises'" (id.; see also Jenkins, 24 NY3d at 65, citing People v Knapp, 52 NY2d 689, 696 [1981]).

When the People invoke the exception, "[t]he ultimate inquiry a suppression court must make is 'whether in light of all the facts of the particular case there was an urgent need that justifies a warrantless entry'" (McBride, 14 NY3d at 446, quoting United States v Martinez-Gonzalez, 686 F2d 93, 100 [1982]).  "In answering that question, we must be cognizant of the [United States] Supreme Court's admonition that 'exceptions to the warrant requirement are few in number and carefully delineated

- 6 -

and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests'" (Harris v O'Hare, 770 F3d 224, 234 [2d Cir 2014], quoting Loria v Gorman, 306 F3d 1271, 1284-1285 [2d Cir 2002] and Welsh v Wisconsin, 466 US 740, 749-750 [1984]).  "In other words, the People who seek exemption from constitutional mandate must show that the exigencies of the situation made that course imperative"  (Matter of Kwok T., 43 NY2d 213, 220 [1977]; see also Welsh, 466 US at 750-751 ["(T)he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."]; People v Jenkins, 24 NY3d 62 [2014]; United State v Reed, 572 F2d 412, 424 [2d Cir 1978]); accord Vale v Louisiana, 399 US 30, 35 [1970]).

Exigent circumstances, by definition, "are those [circumstances] that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officer or other persons, the destruction of relevant evidence, the suspect's escape, or some other consequence improperly frustrating legitimate law enforcement efforts" (William Ringel, Searches & Seizures, Arrests & Confessions § 10:8 [2d ed 2016]; accord Jenkins, 24 NY3d at 65 n 2; Kentucky v King, 563 US 452, 460 [2011]).  These include "time pressures, the emergency nature of the situation, and the potential danger of the situation which makes obtaining a warrant impossible or ill-advised in light of the urgent need for immediate action" (Ringel, supra, § 10:1). A

finding of exigency necessarily depends on the circumstances
presented to the officers at the time of the warrantless entry
(see Welsh, 466 US at 748 n 9; see also United States v George,
883 F2d 1407, 1412 [9th Cir 1989] ["The exigencies must be viewed
from the totality of circumstances known to the officers at the
time of the warrantless intrusion" (emphasis added)]; United
States v Schaffer, 286 Fed Appx 81, 85 [4th Cir 2008]; United
States v Talkington, 843 F2d 1041, 1045 [7th Cir 1988]).

Various factors may assist and guide the court in
deciding the essential question of whether exigent circumstances
are present at the time of entry into the home (McBride, 14 NY3d
at 446). In McBride, the Court identified some such factors
relied on by other courts -- ranging from whether the police have
probable cause to believe a defendant is the perpetrator of the
crime, to the likelihood that a defendant will escape if not
swiftly apprehended.[2] Those factors are "illustrative and not to
be viewed as definitive or exhaustive" (id. at 446 [internal
citations omitted]).  No one factor, or any combination, is
determinative (id.).  Courts may consider other factors, such as

---

[2] The  Court in McBride listed the following factors: (1)
the gravity or violent nature of the offense with which the
suspect is to be charged; (2) whether the suspect is reasonably
believed to be armed; (3) a clear showing of probable cause to
believe that the suspect committed the crime; (4) strong reason
to believe that the suspect is in the premises being entered; (5)
a likelihood that the suspect will escape if not swiftly
apprehended; and (6) the peaceful circumstances of the entry
(McBride, 14 NY3d at 446).

whether obtaining a warrant was impossible or impracticable under the circumstances, whether any delay attendant to securing a warrant risked what the exception specifically seeks to avoid, namely the destruction of evidence and a suspect's escape, or whether life or property are in imminent danger (see United States v Jones, 635 F2d 1357, 1360 [8th Cir 1980]; see also United States v Mondragon, 290 Fed Appx 904, 906 [11th Cir 2006]; Jenkins, 24 NY3d at 65 n 2; Molnar, 98 NY2d at 328).

The People mistakenly rely primarily on the particular factors that point to defendant as the robber, as well as the gravity of the crime.[3] Those factors only address part of the analysis because, even if the police have probable cause to believe defendant is the culprit, they may not make a warrantless entry into defendant's home absent an urgent need to do so (United States v Altman, 797 F2d 514, 515 [7th Cir 1986]); see also Dorman v United States, 435 F2d 385, 389 [DC Cir 1970] [explaining that more than probable cause is required if the government makes a warrantless entry into a home]).

McBride is instructive on this issue. There, the police had eyewitness identification of the defendant as a suspect in an armed robbery and five officers went to his address looking for him. This Court held that exigent circumstances existed to justify a warrantless entry into his apartment not solely on the

---

[3] Defendant does not challenge that the police had probable cause to believe he was the robber.

basis of probable cause to believe he was the robber, but because
of what the police observed and heard when they arrived (McBride,
14 NY3d at 444).  The police saw a body on the floor of the
apartment from the window and, after they knocked on the door and
identified themselves, the officers heard someone run to the
door, which was then answered by a woman who was hyperventilating
and crying (id. at 444-445).  Based on her appearance and lack of
responsiveness, one of the officers believed the woman faced a
life-threatening situation and therefore entered the apartment
(id. at 445).  The Court concluded that these circumstances,
observed and considered by the officers immediately prior to the
time of entry, supported the finding of an urgent need for the
officers to act without a warrant (id. at 447).

Here, when the officers surrounded defendant's building
they blocked the door and had an unobstructed view of the
defendant and the apartment through its two windows.  There was a
light on inside so they were able to look around this very small
space and observe defendant lying in bed, watching television and
apparently unaware of the presence of the police. Only after
several minutes of the police banging on defendant's door and
windows, yelling at him to open up and come out, did defendant
react by making eye contact with the officers, at which point the
officers saw him turn his back, roll over in bed and close his

eyes.[4]  These record facts do not support a finding that defendant presented a danger to the police or someone else in the building, or "a likelihood that [defendant would] escape if not swiftly apprehended," thus justifying the warrantless entry (id. at 446).

Although the police testified that they did not know if defendant had access to another part of the building, they also testified that defendant was in their sights the entire time, and the apartment was "very small," making defendant's movements easily visible.  Significantly, defendant did not leave his bed or try to escape when he had the chance -- from the moment he saw the police at his windows, until the officers broke into his home.  Further, no facts suggest that once the officers surrounded the apartment, they were unable to enter the building and block defendant's access to the interior.  Nor did the officers testify that once they knew defendant was inside the apartment, it was impossible or impracticable to ascertain whether he had access to other areas of the building.

The officers' knowledge that the robber was armed with a small knife also fails to support a finding of exigency in this case. The officers were outside defendant's apartment, protected by a closed door and windows, and well beyond defendant's immediate reach.  As the record establishes, the officers

---

[4] Defendant had no duty to respond to the officers or to open his door, so his failure to respond to these demands does not justify the warrantless entry (see King, 563 US at 470).

maintained a view of defendant at all times, and never saw him brandish a weapon or move towards them.

Further, although the suspect displayed a knife during the course of the robbery, he did not harm or attempt to harm anyone. Indeed, apparently having no fear defendant would use the knife, the store manager chased after defendant for some distance.  Thus, this case is distinguishable from cases in which the defendant has acted violently and shown a willingness to injure someone with a weapon, justifying a warrantless search (see e.g. People v Hill, 70 AD3d 1487 [4th Dept 2010]).  For example in People v Hill, the court found exigent circumstances because when the police arrived they encountered defendant armed with a claw hammer and the victim bleeding from the head, having been attacked by the defendant (70 AD3d at 1488; see also United States v MacDonald, 916 F2d 766, 770 [2d Cir 1990] [explaining that the presence of semi-automatic weapons increased the danger of the situation]; United States v Belisle, 164 Fed Appx 657, 661-662 [10th Cir 2005] [holding that the victim's report that the defendant possessed a gun as grounds to believe the defendant was a danger to the officers]; United States v Huddleston, 593 F3d 596, 600 [7th Cir 2010] [ruling that a sleeping suspect was dangerous because the officers could see him holding a gun while he slept]; United States v Singer, 62 F3d 1426 [9th Cir 1995] [mem.] [finding that a knife could give rise to exigent circumstances when a single officer arrived at a defendant's home

after a report of a stabbing and there was blood on the door];
Thompson v Lake, 607 Fed Appx 624 [2015] [mem.] [ruling in an
excessive force case that exigent circumstances cannot be found
when officer only found knives after entering the home]; People v
Wilson, 144 AD2d 980, 980 [4th Dept 1998] [mem.] [finding exigent
circumstances when the victim was stabbed in abdomen and a
bystander told police the suspect was in the house with the
knife]). Nor were any facts elicited at the hearing that
suggested that any person "may have been seriously injured and in
need of emergency assistance" (People v Doll, 21 NY3d 665, 671
[2013]).

Officer Mayhook's assertion that he did not know what
defendant was capable of doing and was concerned that defendant
might rush out and attack someone, does not provide record
support for the warrantless entry because what matters is whether
the police action is objectively justified (cf. Brigham v City of
Utah, 547 US 398, 404 [2006] [explaining that the circumstances
must objectively justify a warrantless entry in the emergency
exception]; accord People v Ringel, 145 AD3d 1041, 1044 [2d Dept
2016]). Officer Mayhook's uncertainty or speculation about
defendant's possible conduct in the face of defendant's passivity
provided no reason to break down the door at that precise moment,
rather than seek a warrant. Yet, the trial court's ruling that
an officer's subjective belief, when contrary to the record
facts, nonetheless may establish an "exigency" essentially

transformed this narrow exception into a general rule of entry.

Our Court's admonition that "[t]he police themselves cannot by their own conduct create an appearance of exigency" (People v Levan, 62 NY2d 139, 146 [1984]), is particularly relevant here where over a dozen officers responded to the 911 call and immediately took control of the situation. Given these resources, the officers had a clear alternative course of action -- they could have monitored the defendant while a warrant was obtained, or waited for defendant to emerge of his own volition. Those actions would have preserved defendant's rights under the Fourth Amendment and our state constitution.[5]

III.

In the moments before the police broke through the door of defendant's apartment -- the moments critical to a determination whether exigent circumstances existed in this case -- defendant did not take any action against the officers, or attempt to escape or avoid capture. To the contrary, he simply lay in bed, aware that the police were outside his door and looking through his windows. Further, unlike the officers in McBride, the police here were not faced with a situation in which defendant or someone else was in apparent distress and in need of immediate assistance. Nor had defendant harmed anyone during the

---

[5] Based on my conclusion that defendant is entitled to a new trial, I do not address his ineffective assistance of counsel claim.

robbery or before the police broke into his home.

When the police observed defendant in his apartment he did not pose an immediate threat of escape, or a danger to other residents or the police.  Hence, there is no basis for the suppression court's finding of an "urgent need that justifie[d] a warrantless entry" (McBride, 14 NY3d at 446), and defendant's motion to suppress the items obtained from his apartment should have been granted in its entirety.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, in a memorandum.  Chief Judge DiFiore and Judges Fahey, Garcia and Wilson concur.  Judge Rivera dissents in an opinion in which Judge Stein concurs.

Decided June 1, 2017