RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

    *v.*

No. 10-3070

BRYAN K. FERGUSON,
        *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:09-cr-183-1—Peter C. Economus, District Judge.

Argued: November 17, 2011

Decided and Filed: February 27, 2012

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Bryan Ferguson appeals the special conditions of supervised release imposed by the United States District Court for the Northern District of Ohio following his guilty plea, pursuant to a plea agreement, to an indictment charging him with possession of child pornography, in

violation of 18 U.S.C. § 2252(a)(5)(B). He argues that five of the special conditions imposed by the district court are not narrowly tailored and are not reasonably related to his rehabilitation or protection of the public. Ferguson also appeals the district court's denial of his suppression motion, arguing that the seizure of seventy-eight floppy disks from the house he was occupying violated his Fourth Amendment rights. Finally, Ferguson asserts that he was denied effective assistance of counsel due to his trial counsel's failure to preserve his right to appeal the denial of his motion to suppress under a conditional plea agreement and to advise him about the viability of his Fourth Amendment claim. For the reasons given below, we affirm Ferguson's conviction and sentence.

I.

The events leading up to the seizure of Ferguson's property and the discovery of child pornography involve a tip received by the Youngstown, Ohio, police from a police officer in Arizona indicating that Ferguson might have shared child pornography with his twin brother in Arizona, the condemnation of the residence at 774 Cassius Avenue in Youngstown, Ohio, and Ferguson's prior arrests for housing code violations at 774 Cassius.

Although he did not own the home, Ferguson had been residing part-time and storing his personal property at 774 Cassius, allegedly with the permission of the deceased owner of the property, Ferguson's business partner and friend James Stelma. The home was in a state of disrepair and utility services had been disconnected. In March 2008, Ferguson was arrested and charged with housing-code violations pursuant to various Youngstown housing ordinances. Ferguson pled guilty to littering and failing to keep the occupied portion of the dwelling at 774 Cassius clean and sanitary. As a condition of his probation for the littering offense, Ferguson was instructed to clean up 774 Cassius. The following month, in April 2008, James Stelma's estate was informed that the City of Youngstown would raze the property if it was not brought up to code within thirty days. Ferguson continued to stay in the home and keep his property there until January 8, 2009.

At some point prior to January 8, 2009, an officer in the Youngstown Police Department ("YPD") was contacted by Detective Pam Edgerton from the Yavapai County Sheriff's Office in Cottonwood, Arizona. Edgerton informed the YPD officer that Byron D. Ferguson, the identical twin of Bryan Ferguson, had charges pending against him relating to alleged child molestation in Arizona, and it was Edgerton's belief that the twins were sexually exploiting children and that Bryan Ferguson was in Youngstown, Ohio. Edgerton also related that the twins were believed to share floppy disks containing pictures of boys posed in a sexual manner. The YPD officer who received the call from Edgerton apparently recognized Ferguson's name because she had previously arrested him at 774 Cassius. In addition, the officer recognized that 774 Cassius had been red-tagged for demolition by the city due to housing-code violations.

On January 8, officers from the YPD and the Mahoning County Sheriff's Office went to 774 Cassius and arrested Ferguson for criminal trespass. While conducting a protective search of the home to ensure that no additional trespassers were present, the officers found and seized several items of Ferguson's property from 774 Cassius, citing their concern that the house was scheduled for demolition, and presumably the fact that the evidence could be destroyed. Among the items seized were: two sets of containers holding seventy-eight 3.5" computer disks, a computer monitor, a Compaq computer, a web cam, two "seemingly stained vibrators," three cameras loaded with film, four boxes of slides, a VHS tape, a cassette tape, seven 8 mm movie reels, and children's toys. Following the seizure of the evidence, on January 9, 2009, Detective Jason Simon applied for and was issued a search warrant to examine the seized floppy disks for evidence of the crime of pandering sexually-oriented material involving a minor, in violation of Ohio Rev. Code Ann. § 2907.322(A)(5). The case was subsequently referred to the FBI, and on January 21, 2009, FBI special agent Bonnie Hartmann applied for and received a search warrant covering the property seized from 774 Cassius. On April 15, 2009, Ferguson was charged pursuant to a two-count indictment with knowingly transporting computer disks containing child pornography from Arizona to Ohio, in violation of 18 U.S.C. § 2252(A)(a)(1), and possession of computer disks containing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

On June 5, 2009, Ferguson filed a motion to suppress evidence, including the computer disks found to contain child pornography, seized from 774 Cassius on January 8, 2009.  In his motion to suppress, Ferguson argued that 774 Cassius was his home at the time of the search and he was therefore entitled to the protections of the Fourth Amendment.  He argued that a search warrant was required before his property could be removed from the home and exigent circumstances did not exist to justify the seizure. The district court found that Ferguson had no legitimate expectation of privacy in the premises at 774 Cassius because "[Ferguson] did not own, was not in lawful possession of, and did not lawfully control the premises," he had previously been convicted for failing to keep the home clean and sanitary, he had been ordered to stay away from the premises, and 774 Cassius was scheduled for demolition.  As a result, the district court found that Ferguson lacked standing to challenge the search and denied Ferguson's motion to suppress.

On October 5, 2009, Ferguson pled guilty to Count 2 of the indictment, possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and entered into a written plea agreement with the United States Attorney's Office for the Northern District of Ohio. The plea agreement contained a waiver of appeal and post-conviction attack:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. The Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines, using the Offense Level and Criminal History Category found applicable by the Court.  Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

By the terms of the appellate waiver provision, Ferguson gave up his right to appeal his conviction or sentence in the case subject to the specific reservation of his right to appeal "any punishment in excess of the statutory maximum" and any sentence in excess of the maximum sentencing range determined under the Sentencing Guidelines by the court. The appellate waiver provision did preserve Ferguson's rights to raise a claim of ineffective assistance of counsel or prosecutorial misconduct on appeal or collateral attack. The plea agreement did not explicitly preserve Ferguson's right to challenge the denial of his suppression motion on appeal. The plea agreement also set forth several conditions of supervised release that the Government would propose at sentencing.

During the proceedings on October 5, 2009, which were conducted before a magistrate judge with Ferguson's consent, the court conducted a colloquy with Ferguson pursuant to Federal Rule of Criminal Procedure 11. During the colloquy, the magistrate judge specifically discussed the waiver of appellate rights contained in the plea agreement:

> Now, there is a waiver of appellate rights in your plea agreement which differs from the waiver of appellate rights that I just went over with you. And I'm going to distinguish the two for you. If you went to trial and you were convicted, you would have the right to appeal the merits of your case. Ordinarily you have the right to challenge your conviction by filing an appeal or a writ of habeas corpus if you believe that your guilty plea was somehow unlawful or involuntary. . . . You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. . . . However, a defendant may waive those rights as part of a plea agreement. And you have entered into a plea agreement which waives some or all of your rights to challenge the judgment of conviction and the sentence by way of appeal or habeas corpus. Do you understand that.

Ferguson responded, "Yes, Your Honor." The magistrate judge then explained the terms of the appellate waiver provision in the plea agreement and Ferguson affirmatively indicated that he understood the terms when questioned. At the conclusion of the colloquy, the magistrate judge found that Ferguson's plea of guilty was knowingly and voluntarily made, accepted Ferguson's plea of guilty, and submitted a Report and

Recommendation that the district court accept the plea of guilty. On October 21, 2009, the district court accepted the Report and Recommendation and entered a finding of guilty against Ferguson for Count 2, violation of 18 U.S.C. § 2252A(a)(5)(B).

On January 6, 2010, the district court, using the agreed upon advisory Sentencing Guidelines range set forth in the plea agreement, sentenced Ferguson to thirty months' imprisonment and ten years of supervised release. The district court also imposed seventeen special conditions of supervised release. The special conditions include the following: (1) a ban on association or communication with persons under eighteen years of age unless the minor is in the presence of his or her parent or legal guardian and the parent or guardian has been notified of the conviction;[1] (2) a ban on association or correspondence with any individual who has a sexual interest in minors without prior written approval from the probation officer; (3) a prohibition on seeking, obtaining, or keeping a residence, job, volunteer position, church, or engaging in recreational activities involving minors without prior written probation officer approval; (4) a ban on frequenting or loitering within 100 feet of school yards, playgrounds, and other places where minors play or gather, without prior probation officer approval; and (5) a prohibition on online access without prior probation officer approval.

In his appeal, Ferguson raises a claim of ineffective assistance of trial counsel, appeals the denial of his suppression motion, and challenges five of the special conditions of his supervised release.

## II.

Ineffective assistance of counsel claims present mixed questions of law and fact and are reviewed *de novo*. *United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) (citing *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999)). In order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, a defendant must demonstrate that counsel's performance was deficient and that the deficient

---

[1] Association with minors who must be dealt with in order to obtain ordinary commercial services, such as cashiers, was excepted from the condition.

performance prejudiced his defense such that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Supreme Court has established that for a criminal defendant in federal custody a motion under 28 U.S.C. § 2255 is generally the preferred mode for raising a claim of ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). This is due to the fact that "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Id.* at 504–05. Bringing an ineffective assistance of counsel claim by way of a § 2255 motion allows the claim to be litigated in the first instance in the district court, which is "the forum best suited to developing the facts necessary to determining the adequacy of representation" because it may take testimony from witnesses including the defendant, prosecution, and counsel. *Id.* at 505–06. In recognition of the fact that on direct appeal the record generally "has not been sufficiently developed for assessing the merits of the allegation" of ineffective assistance, *United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir. 1993), we have adopted a "'general rule [that] a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal . . . .'" *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)); *see also United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007) (explaining that we generally do not review "ineffective assistance of counsel claims on direct appeal because . . . appellate courts are not equipped to resolve factual issues") (internal quotation marks omitted). However, we may choose to hear the issue on direct appeal if we find that the parties have adequately developed the record. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Wunder*, 919 F.2d at 37; *see also Massaro*, 538 U.S. at 508 ("There may be instances, too, when obvious deficiencies in representation will be addressed by an appellate court *sua sponte*.").

Ferguson argues that the failure of his trial counsel to advise him about the viability of his Fourth Amendment claim when pleading guilty and to preserve the right to appeal the denial of the suppression motion constitutes obviously deficient performance that is apparent on the record. Ferguson bases this argument on his assertion that his suppression challenge is meritorious and dispositive. In short, he argues that the failure of his trial counsel to appreciate the strength of Ferguson's position on the suppression issue, to preserve it for appeal, and to advise Ferguson of the possibility of entering a conditional plea, constitutes clearly deficient performance resulting in prejudice because in the absence of such alleged errors there is a reasonable probability that Ferguson would not have entered an unconditional guilty plea.

We find the record insufficiently developed to support Ferguson's claim of ineffective assistance of counsel. The record is devoid of information regarding the discussions Ferguson had with his counsel regarding the plea agreement. There is also scant information in the record to illuminate whether it might have been sound strategy for defense counsel to allow Ferguson to enter an unconditional plea. What the record does indicate is that defense counsel and the government negotiated a plea agreement that significantly reduced Ferguson's potential sentencing exposure. The maximum sentence for violating 18 U.S.C. § 2252A(a)(5)(B) is ten years' imprisonment with a possible lifetime term of supervised release. Pursuant to the plea agreement, the Sentencing Guidelines range recommended to the district court based on the stipulated Guideline computations for an adjusted offense level of 17 and criminal history category of I was 24 to 30 months. This range was substantially lower than the recommended Guideline range calculated in the Presentence Investigation Report ("PSR"), which would have exposed Ferguson to a potential sentence of 46 to 57 months. Whether this favorable plea agreement would not have been offered to Ferguson if he had entered a conditional plea is unknown. In light of the limited record on direct appeal, we have "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro*, 538 U.S. at 505. Nor can we "ascertain whether the alleged error was prejudicial" without further factual development. *Id.* Thus, in light of the limited record

regarding "the preparation of [Ferguson's] trial counsel or his communications with [Ferguson] about this . . . issue," it is more appropriately raised in the first instance in post-conviction proceedings. *See United States v. Bradley*, 400 F.3d 459, 461–62 (6th Cir. 2005).

### III.

The denial of a motion to suppress presents a mixed question of fact and law. *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007). On appeal, we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011). In order to preserve the right to appeal a nonjurisdictional issue, such as the Fourth Amendment claim asserted here, a defendant must enter a conditional plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. *See United States v. Mendez-Santana*, 645 F.3d 822, 828–30 (6th Cir. 2011). Under Rule 11(a)(2), "a defendant may, with the approval of the court and consent from the government, enter a conditional guilty plea 'reserving in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion.'" *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting Fed. R. Crim. P. 11(a)(2)). However, if the defendant fails to "'preserve all potential collateral challenges through the preservation mechanism of Rule 11(a)(2),'" the defendant will waive "'all challenges to the prosecution except those going to the court's jurisdiction.'" *Id.* (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)). After the entry of an unconditional plea, a defendant "may only attack the voluntary and intelligent character" of the plea. *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Ferguson challenges the district court's denial of his motion to suppress the evidence seized from 774 Cassius. The Government argues in response that Ferguson waived his right to appeal the denial of the suppression motion, thus preventing this court from addressing the district court's ruling. The Government points to the fact that Ferguson entered an unconditional plea and failed to comply with the requirement under

Federal Rule of Criminal Procedure 11(a)(2) that the right to have an adverse determination on a pretrial motion preserved for appellate review be reserved in writing.

In his reply brief, Ferguson appears to acknowledge the fact that the appeal waiver in his plea agreement would generally bar review of the district court's denial of the suppression motion. He asserts that because he is entitled to pursue ineffective assistance of counsel claims under the terms of the plea agreement's waiver provisions, he should also be able to pursue issues upon which the allegedly defective performance is based. However, Ferguson notes that the need to address the suppression issue is tied to the adjudication of his ineffective assistance of counsel claim. He states that "if [his ineffective assistance of counsel] claim is addressed now on direct appeal, so too must the Court address his related claim that the trial court erred in denying the suppression motion." Ferguson does not argue that his plea was involuntary, which would prevent application of the waiver doctrine. Because we decline to address Ferguson's ineffective assistance claim on direct appeal, we also, in light of Ferguson's unconditional plea, decline to review the denial of the motion to suppress.

IV.

Finally, Ferguson challenges five of the special conditions of his supervised release. The Government argues that Ferguson knowingly and voluntarily waived his right to appeal the special conditions in the plea agreement and therefore his challenge to the special conditions is foreclosed. We agree.

Whether a defendant has waived the right to appeal his sentence pursuant to a valid plea agreement is reviewed *de novo*. *See United States v. Thomas*, 605 F.3d 300, 312 (6th Cir. 2010); *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). "For a plea agreement to be constitutionally valid, a defendant must have entered into the agreement knowingly and voluntarily." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). If a defendant validly waives his right to appeal pursuant to a plea agreement, this court is bound by the agreement, and will review a sentence only in limited circumstances, such as where the sentence imposed is based on racial discrimination or is in excess of the statutory maximum. *See United States v. Caruthers*,

458 F.3d 459, 471 & n.5 (6th Cir. 2006). Pursuant to a plea agreement, a defendant "may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future." *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005). In the absence of a valid appeal waiver, we review a district court's "'imposition of a supervised-release condition for abuse of discretion.'" *United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009) (quoting *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006)). "We have held that '[e]ven individual fundamental rights safeguarded by the United States Constitution may be denied or limited by judicially exacted special conditions of supervised release, as long as those restrictions are directly related to advancing the individual's rehabilitation' and preventing recidivism." *Id.* at 608 (quoting *United States v. Kingsley*, 241 F.3d 828, 839 n.15 (6th Cir. 2001)). Thus, "'where a condition of supervised release is reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, it must be upheld.'" *United States v. Lay*, 583 F.3d 436, 450 (6th Cir. 2009) (quoting *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)).

Ferguson challenges five of the special conditions of supervised release imposed by the district court, which restrict his ability to access the internet, associate with minors, associate with persons who have a sexual interest in or attraction to minors, seek employment in positions involving interaction with minors, engage in activities involving minors, and frequent places where minors "play, congregate, or gather." Ferguson alleges that these conditions constitute an abuse of discretion by the district court because they are not reasonably related to his rehabilitation or to the protection of the public, are not narrowly tailored, and constitute a greater deprivation of liberty than necessary. Further, he argues that the appeal waiver does not bar his challenge because it falls within the scope of permissible appeals under the terms of his plea agreement.

First, our precedent suggests that, on this record, Ferguson has knowingly and voluntarily waived his right to appeal the conditions of supervised release. In an unpublished decision, we have previously found that an appeal waiver, voluntarily and knowingly entered into, with terms extremely similar to those in Ferguson's appeal

waiver, prevented a defendant from appealing his sentence and the conditions of supervised release. *United States v. Meeks*, 290 F. App'x 896, 905 (6th Cir. 2008). The knowing and voluntary nature of the waiver of the right to appeal a sentence in a plea agreement is evaluated by examining the district court record, particularly the written plea agreement and the colloquy at the change of plea hearing. *Id.* at 904–05; *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003); *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). Here, Ferguson entered into the plea agreement with the Government which contained the "waiver of appeal and post-conviction attack" provision. Ferguson initialed every page of the plea agreement, indicating that "he was aware of the waiver at the time he entered into the plea agreement." *See Meeks*, 290 F. App'x at 904. Ferguson's signature at the end of the plea agreement endorsed the statement that he "read this entire plea agreement and . . . discussed it with [his] attorney," that by initialing each page Ferguson indicated that he had "read, understood and approved the provisions on that page," and that he entered into the agreement "voluntarily and of [his] own free will." Ferguson reaffirmed the knowing and voluntary nature of his entry into the plea agreement at his change of plea hearing on October 5, 2009. Ferguson indicated that he had read and discussed the plea agreement—which listed all of the conditions the Government was to propose, save one—with his attorney before signing it, that he agreed with the Government's summary of the contents of the plea agreement, and that there was nothing about the plea agreement that he did not understand. After the district court explained the waiver of appellate rights in the plea agreement, Ferguson also indicated that he understood that he had "entered into a plea agreement which waives some or all of [his] rights to challenge the judgment of conviction and the sentence by way of appeal or habeas corpus" and explicitly confirmed that he agreed to the terms of the appellate waiver in the agreement.

The restriction on internet access—which requires Ferguson to obtain permission from his probation officer before he may access the internet—differs slightly from the other four challenged conditions of supervised release. Ferguson did not receive prior notice of this particular special condition of supervised release. Unlike the other four challenged provisions, it was not listed in the plea agreement as one of the conditions

that the Government was to propose to the court. Instead, the condition was to be provided to Ferguson during his meeting with the probation officer following the sentencing hearing. However, that Ferguson did not have notice of this particular provision is immaterial because under his plea agreement he did not reserve the right to challenge on appeal the conditions of supervised release and acknowledged that he understood that the conditions listed in the agreement would likely be proposed but that the sentencing recommendations in the plea agreement would not be binding on the district court.

Second, the plain language of the waiver indicates that Ferguson waived his right to challenge the special conditions. Ferguson reserved the right to appeal "any punishment in excess of the statutory maximum" and "any sentence to the extent that it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines, using the Offense Level and Criminal History Category found applicable by the Court." Ferguson claims that challenging a special condition on the grounds that it is a greater deprivation of liberty than necessary to achieve the goals of sentencing is permissible because such a condition "constitutes a 'punishment' and/or 'sentence' that exceeds the 'statutory maximum' and/or 'exceeds the maximum of the sentencing range determined' under the guidelines." However, Ferguson's reading requires a strained construction of the language in the appeal waiver. The statutory maximum punishment referred to in the plea agreement is most naturally construed to mean the maximum sentence per count, which for a violation of § 2252A(a)(5)(B) is ten years' imprisonment, a fine of $250,000, and supervised release for life. Ferguson was sentenced to thirty months' imprisonment plus a ten year period of supervised release, and assessed criminal monetary penalties totaling $400. Ferguson's sentence of thirty months is clearly below the statutory maximum and was within the applicable sentencing range determined under the Guidelines.

The logical consequence of Ferguson's argument is that special conditions by default are in excess of the statutory maximum because they are not listed as part of the statutory maximum sentence. Under such reasoning, one could appeal *any* special

condition. Allowing Ferguson to raise such a challenge under the terms of his appeal waiver would potentially "render waivers meaningless." *United States v. McIntosh*, No. 02-6364, 2003 WL 22435676, at *1 (6th Cir. Oct. 23, 2003). Instead, we conclude that the general reservation of the right to appeal "any punishment in excess of the statutory maximum" or "any sentence to the extent that it exceeds the maximum sentencing range" does not preserve the right to challenge the conditions of supervised release imposed.[2] *Meeks*, 290 F. App'x at 904–05. In addition, we note that we have previously rejected the argument that a special condition of supervised release requiring sex offender registration was the equivalent of an upward departure and appealable despite the fact that the plea agreement contained an appellate waiver provision. *McIntosh*, 2003 WL 22435676, at *1. The tenuous nature of Ferguson's proposed interpretation of the terms of the waiver provision is also highlighted by the fact that under the terms of the plea agreement, Ferguson was informed of the majority of the special conditions of supervised release that the government was planning to propose to the district court at the time of sentencing, and specifically "reserved the right to object to any or all such conditions." There is no reference to any reservation of the right to *appeal* the conditions. Because Ferguson knowingly waived his rights to appeal his sentence, and none of the specific exceptions to the appellate waiver provision apply, he has accordingly waived his right to challenge the special conditions of supervised release.

Finally, we address Ferguson's argument that the appeal waiver does not block his challenge to the special conditions because in *United States v. Lee*, 502 F.3d 447, 449 (6th Cir. 2007), we considered a challenge to special conditions of supervised release on direct appeal despite the presence of an appeal waiver.

---

[2]Several of our sister circuits have found that similar broad waivers of appellate rights to challenge a sentence include the right to challenge the conditions of supervised release imposed. *See United States v. Goodson*, 544 F.3d 529, 537–38 (3d Cir. 2008) (waiver of right to appeal sentence under 18 U.S.C. § 3742 included waiver of right to appeal conditions of supervised release); *United States v. Joyce*, 357 F.3d 921, 923–24 (9th Cir. 2004) (finding waiver of right to appeal "any aspect" of sentence imposed waived right to challenge special conditions); *United States v. Sines*, 303 F.3d 793, 798–99 (7th Cir. 2002) (finding that challenge to special condition was barred by waiver of right to appeal sentence); *cf. United States v. Andis*, 333 F.3d 886, 892–94 (8th Cir. 2003) (*en banc*) ("It is undisputed that the scope of [the defendant's] waiver includes the conditions of his supervised release.").

*Lee* does not suggest that we should overlook the terms of Ferguson's appeal waiver. In *Lee*, the defendant challenged a condition of supervised release that was to follow a 188-month term of imprisonment. *Id.* Ferguson correctly notes that in *Lee* we entertained the defendant's appeal challenging a special condition of supervised release despite fact that the plea agreement contained an appeal waiver. *Id.* However, in *Lee* we elected to consider the appeal of an imposed special condition despite the fact that "the waiver of appeal may arguably foreclose [the] appeal, because th[e] case possibly implicates ineffective assistance [of] . . . counsel." *Id.* Here, Ferguson has limited his claim of ineffective assistance of counsel to the failure to preserve the ability to appeal the district court's denial of the suppression motion. He challenges the special conditions solely on the grounds that the district court abused its discretion in imposing them. As a result, his argument does not fall within the limited bounds of our decision in *Lee* to reach the challenge to special conditions despite an appellate waiver provision that arguably foreclosed the appeal.

V.

For the foregoing reasons, we affirm the judgment of the district court.