NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0030n.06

Nos. 15-1641 and 16-1555

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jan 13, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARK J. CARPENTER, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: BATCHELDER, SUTTON, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. A federal jury convicted Mark J. Carpenter of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 for his participation in two schemes involving an Arizona gold mine. Carpenter appeals his convictions and sentence. We affirm.

I.

In January 2008, after working for several years in the financial industry, Carpenter founded his own investment company, TGBG Financial Planning. One of Carpenter's early investments, in what he told clients were Saudi Arabian crude oil bonds, turned out to be a Ponzi scheme. Carpenter was not charged for his involvement in that scheme, but he soon began pitching another dubious investment—this time in a defunct gold mine in Arizona.

In June 2008, Carpenter met Ronald Brito, who ran a company called "GetMoni.com," which was supposedly raising capital to operate the mine. Thomas Moore, a business associate

of Brito's, owned the rights to the mine. Carpenter agreed to recruit investors for Brito in exchange for a 5% commission. Over the next four months, Carpenter collected more than $2 million from his clients and wired it to GetMoni.com. In return, he received about $114,000 in commissions. Only about 20% of the money sent to GetMoni.com went to developing the mine, which barely produced any gold. Brito and Moore used the rest to run a Ponzi scheme—pocketing investors' money for their own use or using it to pay off earlier investors in their failed gold-mine venture.

After October 2008, Carpenter continued soliciting investments, but stopped sending money to Brito and began keeping it in his own accounts. Over the next 14 months, he collected about $1 million. Instead of investing the money, however, he used portions of it to pay off earlier investors and cover personal expenses. When clients complained about not being paid, Carpenter and Brito held conference calls to reassure them that their investments were safe and stall them from filing charges. In phone calls, e-mails, and face-to-face meetings, Carpenter tried to allay investors' suspicions that the gold-mine project was a scam. As new investments dried up and regulators started investigating, however, the scheme unraveled.

Federal prosecutors indicted Carpenter and four alleged co-conspirators, including Brito and Moore, in March 2012. Everyone but Carpenter pled guilty. The charges against Carpenter were dismissed without prejudice, and he was re-indicted for the same gold-mine scheme. The government added charges for a second fraud scheme based on Carpenter's misrepresentations after he stopped sending money to Brito altogether. After a six-day trial, the jury convicted Carpenter of 36 counts of wire fraud and one count of mail fraud.

A few days later, Carpenter's trial counsel moved to withdraw, citing a breakdown in their relationship. The district court granted the motion and appointed Jerome Sabbota, who had

represented Moore in the earlier proceedings before a different judge, to represent Carpenter for sentencing. The court sentenced Carpenter to 125 months in prison (10 months below the guidelines range) and ordered him to pay about $3 million in restitution. Carpenter appealed. While the appeal was pending, he filed a motion for a judgment of acquittal, a new trial, or re-sentencing. The district court denied the motion. Carpenter appealed that order as well, and the two appeals were consolidated for our review.

## II.

### A.

Carpenter first challenges the sufficiency of the evidence underlying his convictions. On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). To convict Carpenter of wire and mail fraud, the government was required to prove that he "devised or willfully participated in a scheme to defraud," that he used interstate wire communications or mailings in furtherance of the scheme, and that he "intended 'to deprive a victim of money or property.'" *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (citation omitted).

The jury convicted Carpenter of fraud arising from two distinct though related schemes. The first involved Carpenter's representations and omissions in soliciting investors for Brito's gold-mine project. The second involved the false statements Carpenter had made after he stopped forwarding investor money to Brito and kept the money in his own accounts.

As to the first scheme, Carpenter argues that the government failed to prove that he acted with intent to defraud—i.e., that he "willfully participated" in Brito's Ponzi scheme. *Id.* In

Carpenter's telling, he was a poor financial planner who sold some bad investments. The real culprits, he says, were Brito and Moore; according to Carpenter, he was as much a victim as his clients.

Yet the government presented plenty of evidence from which a rational juror could infer that Carpenter acted with intent to defraud. When Carpenter pitched the gold-mine investment, he assured clients that he had worked with Brito on "numerous occasions" and had found him "very trustworthy." Carpenter said that he had personally visited the mine and that it was "flourishing." He also told investors that the gold-mine investment was "safe" and "a sure thing," while promising astronomical returns of up to 120% annually.

In reality, per Brito's testimony at trial, Carpenter had never worked with Brito before or visited the mine. The mine itself remained dormant long after Carpenter told investors it was flourishing. Meanwhile, Carpenter did not tell investors that he was getting a 5% commission and that their money was going to Brito at GetMoni.com rather than to the mine. In September 2008, one of Carpenter's clients alerted him that Brito was on an internet list of "suspected scammers." Yet Carpenter continued to solicit investments for Brito. Moreover, at trial a financial expert testified that the rates that Carpenter promised to investors were "ludicrous and not reality-based." A rational juror could easily infer that Carpenter, a certified financial planner with several years of industry experience, knew as much.

Carpenter contends that this evidence was insufficient because no one testified directly that Carpenter knew about the fraud. "Circumstantial evidence alone," however, "if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (citation omitted); *see also United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (citation omitted). Given

Carpenter's material misrepresentations and omissions here, a jury could find that Carpenter was a perpetrator of the gold-mine Ponzi scheme.

As to the second scheme, Carpenter concedes that after October 2008 he continued to accept investor money without passing it on to Brito, GetMoni.com, or the gold-mine venture. His defense is that he did so to "make his investors whole," not to defraud them. A defendant acts with fraudulent intent, however, whenever he means to deprive investors of their money— "even if only in the short term." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). The defendant's ultimate motivation for deceiving investors is irrelevant. *Id.* at 488. Here, that Carpenter misled investors with the intention of getting them to "accept a substantial risk that otherwise would not have been taken" was enough to show his intent to defraud. *Id.* If Carpenter's clients had known that he was going to keep their money or use it to pay off past investors, rather than investing it in the gold mine, they very likely would not have entrusted him with their money in the first place. Hence there was enough evidence for the jury to convict Carpenter of both frauds. That the evidence was plainly sufficient to support Carpenter's fraud convictions likewise refutes his claim that the district court should have granted his motion for a new trial on weight-of-the-evidence grounds. *See United States v. Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007).

B.

Carpenter also argues that he should have received a new trial because, he says, his trial counsel was constitutionally ineffective. *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). As a general rule, however, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal[.]" *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012). Instead a defendant normally should raise those claims in a post-conviction

proceeding under 28 U.S.C. § 2255, where the parties can develop an adequate record. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003). Here, we have "scant information in the record to illuminate whether it might have been sound strategy" for defense counsel to make the choices he made at trial. *Ferguson*, 669 F.3d at 763. Thus we decline to address this claim in this appeal.

C.

Finally, Carpenter argues on two grounds that the district court should have granted his motion for re-sentencing. After Carpenter's trial counsel withdrew, the district court appointed attorney Jerome Sabbota to represent Carpenter at sentencing. Sabbota had previously represented Thomas Moore, one of Carpenter's alleged co-conspirators in the Ponzi scheme, with whom Carpenter was initially indicted in an earlier proceeding before a different judge.

Carpenter first contends that, before appointing Sabbota, the district court should have held a hearing under Federal Rule of Criminal Procedure 44(c). That rule requires trial courts to "inquire" into possible conflicts in cases of "joint representation," which is "simultaneous representation occurring in the same proceeding." *Moss v. United States*, 323 F.3d 445, 455 n.15 (6th Cir. 2003). But Sabbota represented Moore in a different proceeding, which ended over a year before he represented Carpenter. This representation was thus successive rather than joint, which means that Rule 44(c) does not apply. Thus, the district court's appointment of Sabbota at sentencing, though perhaps unwise given his prior association with a co-conspirator, did not require a Rule 44 hearing.

Second, Carpenter argues that Sabbota's representation at sentencing was constitutionally ineffective. Specifically, Carpenter contends that Sabbota should have contrasted Carpenter's culpability favorably with that of Moore, who Carpenter says was the "real villain" and who

received a lighter sentence (71 months instead of 125). Carpenter also faults Sabbota for failing

to file post-trial motions and make certain other arguments at sentencing. Given the lack of a

developed record for adjudicating any of these claims, we decline to address them in this appeal.

*See Massaro*, 538 U.S. at 505. Carpenter may bring them together with his other ineffective-

assistance claims in a § 2255 petition.

\* \* \*

The district court's judgment is affirmed.