NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0270n.06

Case No. 21-5201

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 08, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELIEZER ALBERTO JIMENEZ, | ) | ON APPEAL FROM THE UNITED |
| Petitioner - Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| v. | ) | KENTUCKY |
| | ) | |
| UNITED STATES OF AMERICA, | ) | OPINION |
| Respondent - Appellee. | ) | |
| | ) | |

Before: SILER, BUSH, and MURPHY, Circuit Judges.

SILER, J., delivered the opinion of the court in which BUSH and MURPHY, J.J., joined. BUSH, J. (pp 8–11), delivered a separate concurring opinion.

SILER, Circuit Judge. Eliezer Alberto Jimenez filed a pro se 28 U.S.C. § 2255 motion challenging his 87-month prison sentence. The district court denied the motion, however, for three related reasons. First, as part of his plea agreement Jimenez waived the right to collaterally attack his sentence on every ground except for ineffective assistance of counsel. Second, in the district court's view, Jimenez's pro se § 2255 motion did not raise an ineffective-assistance claim, so he failed to raise the only claim he preserved. And third, the district court rejected Jimenez's argument that enforcement of his plea agreement's collateral-attack waiver would work a "miscarriage of justice." We agree with the district court in all three respects, so we affirm.

I

Jimenez helped transport and launder nearly $300,000 in illegal drug proceeds. The government charged him with conspiracy to launder money, 18 U.S.C. § 1956(h), and he pleaded guilty to that charge. His plea agreement included an expansive waiver of post-conviction rights. With an exception for ineffective-assistance claims, the waiver prohibits Jimenez from collaterally attacking his "guilty plea, conviction, and sentence." Jimenez's plea agreement provides, in relevant part:

> 8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

> . . .

> 14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

Prior to sentencing, the probation office compiled its findings and recommendations in a presentence investigation report. The report assessed Jimenez four criminal history points: one point for a 2015 Minnesota state-court conviction, one point for a 2016 Minnesota state-court conviction, and two points for committing the instant offense while serving probation for the 2015 conviction. Paired with an offense level of 25, this yielded a guidelines imprisonment range of 70–87 months.

Jimenez filed a set of pro se objections to the presentence investigation report. As relevant here, he objected to his criminal history score because three of the four points stemmed from his

2015 state conviction, and, at the time of sentencing, he was challenging that conviction in Minnesota's state courts. He believed the district court shouldn't punish him—shouldn't heighten his criminal history score—because of a disputed state-court conviction. Jimenez ultimately withdrew these objections, and the district court sentenced him to 87 months in prison followed by three years of supervised release.

Approximately eight months after Jimenez's federal sentencing, a Minnesota state court vacated his 2015 conviction as obtained "in violation of . . . the laws and constitution of the United States and the State of Minnesota." In response, Jimenez filed a pro se 28 U.S.C. § 2255 motion to modify his sentence, and he attached to that motion a pro se memorandum of law. Citing *Johnson v. United States*, 544 U.S. 295 (2005), he asked the district court to reopen his sentencing, recalculate his guidelines range, and impose a new sentence in light of his newly diminished criminal history score.[1] The district court denied the motion because Jimenez waived most of his post-conviction rights, including the right to bring a *Johnson* challenge, when he signed a plea agreement with an expansive waiver provision. And even though Jimenez's plea agreement preserved the right to bring a post-conviction ineffective-assistance claim, the district court noted that Jimenez's § 2255 motion lacked the basic features of an ineffective-assistance claim. Most importantly, neither the motion nor its accompanying memorandum provided any allegations explaining how Jimenez's trial counsel performed ineffectively.

Jimenez, now represented by counsel, raises two arguments on appeal. First, he asks us not to enforce his plea agreement's collateral-attack waiver because doing so, he contends, would

---

[1] *Johnson* held, in relevant part, "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." 544 U.S. at 303.

work a miscarriage of justice. Second, he says the district court erred when it determined his § 2255 motion did not raise a claim for ineffective assistance of counsel.

## II

We have jurisdiction under 28 U.S.C. §§ 1291 & 2253. Both parties have conceded the proper standard of review is de novo. *See* Recording of Oral Arg. at 13:00–14:05; Appellee's Br. at Page 5.

## III

"[S]o long as the waiver is made knowingly and voluntarily," a criminal defendant can waive the right to appeal and collaterally attack his sentence. *See United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012). "A defendant may waive any right, even a constitutional one, in a plea agreement, if he relinquishes that right knowingly and voluntarily. It follows that a defendant may waive his right to bring future postconviction challenges, which are not constitutionally required, so long as the waiver is knowing and voluntary." *Portis v. United States*, 33 F.4th 331, 334–35 (6th Cir. 2022) (citation omitted).

We find that Jimenez knowingly and voluntarily waived his collateral-attack rights. The terms of the plea agreement and "the colloquy at the change of plea hearing" are highly probative factors in a knowledge/voluntariness inquiry, *United States v. Ferguson*, 669 F.3d 756, 765 (6th Cir. 2012), and both factors suggest a knowing and voluntary waiver took place in this case. The plea agreement that Jimenez signed has a broad and unambiguous waiver provision, and the district court explained the provision—its meaning and its consequences—before accepting Jimenez's guilty plea. Consider the following colloquy.

       THE COURT:  Paragraph 8 [of the plea agreement] also states that except for claims of ineffective assistance of counsel, you are waiving the right to attack collaterally the guilty plea, the conviction, and the sentence.

       When you give up the right to collaterally attack, as that term is used in this sentence, you're giving up the right to file a separate lawsuit or a separate motion to challenge it.  Sometimes that's referred to as a habeas motion or a habeas proceeding.

       And with one exception you would not be able to attack collaterally the guilty plea, the conviction, or the sentence.  The exception would be a claim of ineffective assistance of counsel.  You could still make such a claim in a collateral proceeding, but you'd be limited to that claim.

       . . .

       And do you understand that as well?

       JIMENEZ:  Yes, Your Honor.

Jimenez was thus well-aware that he was waiving most of his post-conviction rights as a condition of his plea.

A finding of knowledge and voluntariness does not, however, end our inquiry.  We have indicated that we will refuse to enforce knowing and voluntary waivers in at least three instances: (1) when a criminal defendant attacks his plea agreement as "the product of ineffective assistance of counsel, " *In re Acosta*, 480 F.3d 421, 422 & n.2 (6th Cir. 2007), (2) when a district court sentences a criminal defendant above the statutory maximum, *Vowell v. United States*, 938 F.3d 260, 271 (6th Cir. 2019) (quoting *United States v. Caruthers*, 458 F.3d 459, 471–72 (6th Cir. 2006)), and (3) when a district court punishes a defendant because of the defendant's race, *Ferguson*, 669 F.3d at 764.

None of those exceptions applies here.  Exceptions two and three are clearly inapplicable. The district court, after all, sentenced Jimenez well below the statutory maximum of 20 years, and nothing suggests racial discrimination influenced the district court's sentencing decision.  The first

exception also does not apply because Jimenez explicitly preserved his right to bring an ineffective-assistance claim on collateral attack, so any such claim would fall outside the scope of the waiver.

That said, as the district court explained, Jimenez failed to raise an ineffective-assistance claim in his § 2255 motion. His motion never mentioned ineffective assistance of counsel or the Sixth Amendment right to counsel, nor did it explain (or even hint at) how his trial counsel performed ineffectively. *See* Recording of Oral Arg. at 10:49–11:10 (Jimenez's counsel conceding "that is not there, Your Honor."). And even though the memorandum accompanying the motion passingly cited *Strickland v. Washington*, 466 U.S. 668 (1984),[2] an unexplained citation "in [a] brief in support of [a] § 2255 motion . . . is wholly insufficient to raise the issue of ineffective assistance of counsel." *Cf. Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). Because neither Jimenez's § 2255 motion nor the accompanying memorandum (A) listed ineffective-assistance as a ground for relief or (B) stated any facts supporting an ineffective-assistance claim, the ineffective-assistance exception in his plea agreement waiver does not apply here.[3] *See* R. Governing Section 2255 Proceedings 2(b) (explaining how a § 2255 motion must "specify all the grounds for relief available to the moving party" and "state the facts supporting each ground").

Jimenez asks us to recognize a "miscarriage of justice" exception to waiver enforceability, *see*, *e.g.*, *United States v. Andis*, 333 F.3d 886 (8th Cir. 2003) (en banc), but we decline to do so in this case. Jimenez knowingly and voluntarily waived the right to collaterally attack his sentence,

---

[2] We note that the *Strickland* language in Jimenez's memorandum appears to come from a "form" paragraph cut-and-pasted from another prisoner's pro se filing. The *Strickland* rule material, for example, repeatedly refers to someone named "Kemp" (rather than Jimenez).

[3] We realize Jimenez filed his § 2255 motion pro se. And we recognize that a document filed pro se "is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But the liberal-construction rule does not "abrogate basic pleading essentials," *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), such as the requirement that a § 2255 petitioner state the factual bases underpinning every claim for relief.

and this situation, *i.e.*, a vacated state-court conviction and a diminished guidelines range, was a foreseeable consequence of that waiver. Enforcing the waiver and applying the plea agreement as written does not work a miscarriage of justice.

We recognize that other circuit courts decline to enforce valid appeal or collateral-attack waivers when doing so would result in a "miscarriage of justice." And they take varying approaches to identify the circumstances that meet this standard. *Compare United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001), *with Andis*, 333 F.3d at 891–92. Yet this circuit debate would not affect the outcome here. No matter the standard, Jimenez identifies no circuit court that has found a miscarriage of justice in his circumstances—when a court subsequently vacates a prior conviction used to enhance a defendant's advisory guidelines range.

\*       \*       \*

**AFFIRMED**.

BUSH, Circuit Judge, concurring. I join today's opinion in full. I write separately to explain some additional points about why the district court's judgment must be affirmed. The parties briefed this case on the assumption that we should determine the availability of a miscarriage-of-justice exception to Jimenez's collateral-attack waiver first, and, only if we found such an exception unavailable, determine whether Jimenez raised an ineffective-assistance claim. In my view, those arguments should be considered in reverse order. Jimenez contends on appeal that his plea agreement *itself*, particularly its collateral-attack waiver, may have been the product of ineffective assistance. *See, e.g.*, Appellant's Br. at 44. And if that were true, it would likely render the waiver unenforceable. *See, e.g.*, *Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022). So if Jimenez had validly raised an ineffective-assistance claim, we would have had no occasion to weigh a miscarriage-of-justice exception to an otherwise-*enforceable* collateral-attack waiver. We instead would have demurred on the miscarriage-of-justice issue and remanded the ineffective-assistance claim to the district court for a hearing on Jimenez's § 2255 motion. The district court then could have taken evidence on whether Jimenez received ineffective assistance during his plea bargaining. And only if it turned out that Jimenez received *effective* assistance (and thus that the waiver is enforceable) would we have needed to examine a potential miscarriage-of-justice exception.

Today, however, we properly consider that exception because Jimenez never raised an ineffective-assistance claim where it mattered: his *pro se* § 2255 motion and accompanying memorandum of law. Indeed, those documents articulate nothing like Jimenez's new theory on appeal: that he would not have agreed to the waiver if he had received effective counsel. *Nowhere* in his § 2255 motion—written on the standard-form § 2255 template available to prisoners—did he mention *Strickland*, "ineffective assistance," or anything that his lawyer should have done but

failed to do during any phase of the proceeding. *See generally* Mot., R. 201. And that was despite the explicit, repeated instruction in the template to "state the specific facts that support your claim." *See, e.g.*, *id.* at 4. In reality, Jimenez wanted a straightforward sentence reduction under *Johnson v. United States*, 544 U.S. 295, 303 (2005), which is why his § 2255 motion never even suggested ineffective assistance.

Realizing that fact, Jimenez's appellate counsel contends that the ineffective-assistance argument was preserved not in Jimenez's original motion, but in the accompanying memorandum of law. *See* Appellant's Br. at 49. As the district court recognized, however, Jimenez's memorandum of law comes no closer to stating an ineffective-assistance claim. True, it recites the *Strickland* standard amongst a hodgepodge of other collateral-attack caselaw. But like the motion, the memorandum makes no attempt to link that caselaw to any act or omission of Jimenez's lawyer during his plea bargaining, sentencing, or any other phase of the proceeding. *Cf.* R. Governing Section 2255 Proceedings Rule 2(b)(1)–(3). And no surprise there. Jimenez plainly lifted that legal-standard section from the petition of another prisoner named Kemp. As a result, it included accurate but irrelevant propositions about, for instance, Kemp's rights at trial. *See, e.g.*, Mem. at 6, R. 201-1 ("Further, Kemp must show that counsel's errors were prejudicial and deprived him of a 'fair trial,' or in other words, a trial whose result is reliable."). It said nothing about the defectiveness of Jimenez's plea.

Indeed, we pressed counsel at oral argument about what within this cut-and-paste contained anything specific to Jimenez's case indicating ineffective assistance. Recording of Oral Arg. at 9:56–10:20. But counsel could muster no explanation for these odd and irrelevant portions of the legal-standard section (other than Jimenez having cribbed the *Strickland* boilerplate from petitioner Kemp). *Id.* And counsel likewise conceded that neither Jimenez's memorandum nor

his motion contains any specific allegation about how his lawyer rendered ineffective assistance.[1] *See id.* at 10:49–11:10.

It is true, of course, that Jimenez initially filed those documents *pro se*, and so they must be afforded a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the liberal-construction rule is not a liberal-invention rule. It does not require the district court to lawyer on behalf of the movant or to conjure unevidenced claims from thin air. *See, e.g.*, *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Coleman v. Shoney's Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) (quoting *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003). Here, therefore, the district court properly determined that Jimenez never raised an ineffective-assistance claim.

Moreover, Jimenez waived his right, unambiguously and in open court, to bring *any* collateral attack other than for ineffective assistance. Jimenez thus necessarily knew that the exact claim he now seeks to press—a mere sentence-reduction request—was subject to the waiver. *See United States v. Ferguson*, 669 F.3d 756, 765 (6th Cir. 2012). And as to that claim, the fact remains that Jimenez's vacated conviction implicates *only* his advisory guidelines range—not the sentencing range set by statute, and thus not the lawfulness of his sentence. *See* 18 U.S.C.

---

[1] Much too late, Jimenez's counsel on appeal suggested that the ineffective assistance really occurred when Jimenez's old lawyer supposedly advised Jimenez that seeking modification of his federal sentence based on the potential vacatur of his 2015 state conviction would be pointless. Indeed, Jimenez now claims that his counsel below believed a vacatur of the state conviction could reduce Jimenez's sentence only if the vacatur occurred *before* the federal sentencing, and that so long as Jimenez's criminal history was accurate at the time of his sentencing, future vacatur of the state conviction could never be used to reduce the corresponding federal sentence. At least this is the inference Jimenez's appellate counsel draws from Jimenez's former counsel's remark in a brief below that "[t]he Court is now aware through documents received by the probation officer and filed with the Court, that there is a legal challenge going on to the above mentioned conviction, but that in itself has no legal significance unless it is resolved prior to the sentencing." *See* Appellant's Br. at 9–10, 44. Yet far from a smoking gun, it is not at all clear from this comment that Jimenez's former counsel somehow advised Jimenez that vacatur of the state conviction could *never* lead to post-conviction relief. Rather, counsel's comment at the time was actually correct—that the mere possibility that Jimenez's conviction might be vacated some time *after* the federal sentencing was not itself sufficient to seek a reduction of the federal sentence *during* the sentencing.

§§ 1956(a), (h).   Indeed, the district court today could lawfully reimpose the precise sentence Jimenez received.  *See id.*  I agree that in these circumstances, no miscarriage-of-justice exception is available.