■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE SCOTT, Appellant. [21 NYS3d 121]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Modica, J.), rendered January 9, 2013, convicting him of criminal possession of a controlled substance in the seventh degree, resisting arrest, and criminal possession of marijuana in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review so much of an order of the same court (Kron, J.) dated September 5, 2012, as, after a hearing, denied, in part, that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is modified, on the law, by vacating the convictions of criminal possession of a controlled substance in the seventh degree and criminal possession of marijuana in the fifth degree under counts five and seven of the indictment, respectively, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted to the extent that all physical evidence recovered from within his home is suppressed, and the order dated September 5, 2012, is modified accordingly.

At a suppression hearing, the People's evidence established that on September 13, 2011, New York City Police Officers Patrick Nozdrovicky and James Zozzaro were on anti-crime patrol, in plainclothes, with their sergeant, when they observed the defendant walking in the middle of a street in Queens speaking irately on a cell phone. The officers approached in their vehicle and asked the defendant to explain what was going on. The defendant explained that he was having an argument with his girlfriend. When Officer Nozdrovicky and his sergeant began to exit the police vehicle, the defendant turned and ran. As the defendant turned to run, Officer Zozzaro, who was driving the police vehicle, saw what appeared to be the handle of a gun under the defendant's jacket in the rear of his waistband or belt. He yelled "gun" to Officer Nozdrovicky and their sergeant, who had already commenced pursuit. The defendant ran through a backyard and then through a hole in a fence. He was carrying a knapsack that got caught on the fence, but he left it behind and continued to run through the next yard and entered a house through a rear door. The officers who were chasing him on foot grabbed the bag and attempted to follow the defendant into the house, but the door was locked and they were unable to force it open. They called the Emergency Services Unit (hereinafter ESU) and set up a perimeter around the house, which they later learned belonged to the defendant.

Eventually there were 20 to 25 officers at the scene. The ESU officers put on heavy protective vests and helmets, and some carried bunker shields and a sub-machine gun. The ESU officers entered the defendant's house and cleared the basement and the first floor, finding no persons on either floor. Before they ascended to the second floor, the defendant appeared at the top of the staircase and surrendered. He came down the stairs and was searched, arrested, and removed from the house. No weapon was recovered from his person. The ESU officers then searched the second floor for other persons, and

upon finding none, exited the house. After the ESU officers had secured the house and the defendant was outside in custody, the original patrol officers went into the house to the second floor to search for the gun they believed the defendant had been carrying. On the floor by a nightstand, the officers found 50 bags of marijuana and what appeared to be ecstasy tablets. In a separate area of a room on the second floor, inside of a closed storage bin, they found a firearm wrapped in a bandana. The officers also found five bags of marijuana in the knapsack the defendant abandoned while running.

After a suppression hearing, the Supreme Court suppressed the gun, but otherwise denied that branch of the defendant's omnibus motion which was to suppress the physical evidence. With respect to the drugs recovered in the defendant's home, the court held that the initial warrantless entry into the house was justified under the emergency exception to the warrant requirement because the police had seen what appeared to be a gun in the defendant's waistband and they did not know whether there were any civilians present in the home. Although the court recognized that any emergency had abated and the ESU officers had secured the house before the patrol officers conducted the search that led to the discovery of the drugs, the court held that because the police had maintained a continued presence at the house and the items were in plain view, the patrol officers' search was lawful.

It is a fundamental principle of the Fourth Amendment to the US Constitution and article I, § 12 of the NY Constitution that searches and seizures inside a home without a warrant are presumptively unreasonable (*see Brigham City v Stuart*, 547 US 398, 403 [2006]; *Payton v New York*, 445 US 573 [1980]; *People v Knapp*, 52 NY2d 689, 694 [1981]). The government has the burden of proving that the exigencies of the situation justified the warrantless search of an individual's home (*see Vale v Louisiana*, 399 US 30, 34 [1970]; *People v Jenkins*, 24 NY3d 62, 65 [2014]; *People v Knapp*, 52 NY2d at 694; *People v Hodge*, 44 NY2d 553, 557 [1978]).

Under the emergency exception, the police may make a warrantless entry into a protected area if (1) they have reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance for the protection of life or property, (2) the search was not primarily motivated by an intent to arrest and seize evidence, and (3) there was some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched (*see People v Mitchell*, 39 NY2d 173, 177-178 [1976]). Although the United

States Supreme Court has determined that the second prong regarding the subjective intent of the police is not relevant under the Fourth Amendment (*see Brigham City v Stuart*, 547 US at 404-405), we need not decide whether the second prong of *Mitchell* is still viable under the New York Constitution because we conclude that the People did not satisfy the first prong of *Mitchell* (*see People v Doll*, 21 NY3d 665, 671 n [2013]; *People v Dallas*, 8 NY3d 890, 891 [2007]; *People v Hammett*, 126 AD3d 999, 1000-1001 [2015]). There was no evidence of any circumstances which would have provided a reasonable basis for the patrol officers to believe that there was an emergency at hand and an immediate need for police assistance for the protection of life or property inside the house (*cf. People v Hammett*, 126 AD3d at 1000; *People v Morris*, 126 AD3d 813, 814 [2015]; *People v Mormon*, 100 AD3d 782, 783 [2012]).

Furthermore, even where exigent circumstances justify the warrantless entry into a protected area, the scope and duration of the warrantless search must be limited by and reasonably related to the exigencies of the situation (*see Mincey v Arizona*, 437 US 385, 393 [1978]; *People v Knapp*, 52 NY2d at 696). Here, the subject drugs were not discovered by the ESU officers during their protective sweep. Rather, they were discovered by the patrol officers, who conducted an evidentiary search after the ESU officers had secured the house and removed the defendant, who was the only occupant. At the time of the patrol officers' search, any purported exigency had abated, the police were in complete control of the house, and there was no danger that the defendant, who was in custody, would dispose of or destroy the weapon. Accordingly, the police were required to obtain a warrant prior to conducting the evidentiary search (*see People v Jenkins*, 24 NY3d 62, 64-65 [2014]; *People v Knapp*, 52 NY2d at 696-698). Moreover, contrary to the suppression court's findings, it is of no avail that the contraband was found in plain view, since the patrol officers' warrantless entry was illegal (*see People v Knapp*, 52 NY2d at 697; *compare People v Stanislaus-Blache*, 93 AD3d 740 [2012]; *People v George*, 7 AD3d 810 [2004]).

As an alternative ground for upholding the suppression ruling, the People argue that the initial entry to the defendant's home was justified because the police were in "hot pursuit" of a fleeing suspect (*see United States v Santana*, 427 US 38, 42-43 [1976]). Because the suppression court did not decide that issue adversely to the defendant, this Court is precluded from reviewing that issue on the defendant's appeal (*see CPL 470.15 [1]; People v Yusuf*, 19 NY3d 314, 322 [2012]; *People v Ingram*,

18 NY3d 948, 949 [2012]; *People v Concepcion*, 17 NY3d 192, 195 [2011]; *People v LaFontaine*, 92 NY2d 470, 473-474 [1998]; *People v Goodfriend*, 64 NY2d 695 [1984]). Moreover, because the patrol officers' evidentiary search exceeded the scope of any exigency, it is unnecessary to remit the matter to the Supreme Court for further proceedings (*cf. People v LaFontaine*, 92 NY2d at 474-475; *People v Thompson*, 118 AD3d 922, 924-925 [2014]). Accordingly, the physical evidence recovered from the defendant's home must be suppressed. In addition, at trial, Officer Zozzaro testified that he was unable to identify the marijuana specifically recovered from the knapsack. Under the circumstances, the People failed to present legally sufficient evidence from which the jury could rationally conclude that the defendant possessed more than 25 grams of marijuana in the knapsack (*see* Penal Law § 221.10 [2]). Since there was insufficient evidence to prove the defendant's guilt of counts five and seven of the indictment, those counts of the indictment must be dismissed (*cf. People v Henagin*, 129 AD3d 864 [2015]; *People v Severino*, 126 AD3d 1015, 1016 [2015]; *People v Harris*, 122 AD3d 942, 945 [2014]; *People v Carmichael*, 92 AD3d 687, 688 [2012]).

The defendant's remaining contentions either need not be reached in light of our determination or are without merit. Mastro, J.P., Austin, Maltese and Barros, JJ., concur.